J. C. REED *v.* MAYOR AND ALDERMEN OF CITY OF ATHENS
et al.

(*Knoxville.* September Term, 1921.)

1. **MUNICIPAL CORPORATIONS.** Street improvements for benefit
of public, and not of abutting property owners, and bond issue there-
for need not be submitted to voters.

Private Acts 1919, chapter 598, providing that two-thirds of the cost
of street improvements shall be borne by abutting property own-
ers, and authorizing city to issue bonds for the part so charged
to be repaid by assessments against adjacent property, is not in-
valid as violating Constitution article 2, section 29, which pro-
vides that the credit of a city or town shall not be given or
loaned to any person, etc., except by assent of three-fourths of the
qualified voters at an election, the expenditure not being for the
benefit or in aid of the adjacent property owners, but a public
improvement made on the city streets, over which it maintains
control for the benefit of all its citizens. (*Post, pp.* 172, 173.)

Acts cited and construed: Acts 1919, ch. 598.

Case cited and approved: Imboden v. City of Bristol, 132 Tenn., 562.

Constitution cited and construed: Art. 2, sec. 29.

2. **STATUTES.** Act not invalid as embracing more than one subject
in title and body if provisions have proper connection.

Private Acts 1919, chapter 598, providing for construction and im-
provement of streets within cities and towns having a population
of not less than two thousand, two hundred and fifty nor more
than two thousand, three hundred, the provisions of which relate,
either directly of indirectly, to the subjects expressed in the title,
and having a natural connection therewith, is not unconstitutional
as embracing more than one subject in title and body, under Con-
stitution article 2, section 17. (*Post, pp.* 173, 174.)

Reed v. Mayor and Aldermen of Athens.

Cases cited and approved: Cannon ·v. Mathes, 55 Tenn., 504; Heiskell v. Knoxville, 136 Tenn., 376; State v. Cumberland Club, 136 Tenn., 84; Scott v. Nashville Bridge Co., 143 Tenn., 106; State v. Schlitz Brewing Co., 104 Tenn., 715; Memphis Street Ry. Co. v. State, 110 Tenn., 598.

Constitution cited and construed: Art. 2, sec. 17.

3. **STATUTES.** Amending by implication · former statute, need not recite in caption or otherwise title or substance of act amended.

Private Acts 1919, chapter 598, providing for the issuance of bonds for the reimprovement of streets, etc., and amending Acts 1903, chapter 316, does not violate Constitution, article 2, section 17, providing that all acts which amend former laws shall recite in their caption or otherwise the title or substance of the law amended; the amendment being by implication. (*Post, pp.* 174, 175.)

Cases cited and approved: Goodlar v. Memphis, 113 Tenn., 27; Railroad v. Maxwell, 113 Tenn., 464; Railroad v. Railroad, 116 Tenn., 500; Malone v. Williams, 118 Tenn., 444; State ex rel. v. Taylor, 119 Tenn., 253; State ex rel. v. McConnell, 71 Tenn., 340; State ex rel. v. Gaines, 72 Tenn., 353; Insurance Co. v. Taxing Dist., 72 Tenn., 647; State v. Yardley, 95 Tenn., 558; Railroad v. State, 110 Tenn., 598.

4. **MUNICIPAL CORPORATIONS.** Homestead subject to assessment for street improvements.

Under article 11, section 11, providing that the exemption of the homestead shall not operate against public taxes nor debts for purchase money or improvements, Private Acts 1919, chapter 598. providing that a portion of the cost of street improvement be assessed to the abutting property owners, subjected a homestead to the assessment thereof. (*Post, p.* 175.)

Case cited and approved: State ex rel. v. Powers, 124 Tenn., 533.

Code cited and construed: Sec. 3799 (S.).

5. **MUNICIPAL CORPORATIONS.** Bonds may be issued for proper use of city without vote of people.

Where the credit of a city is to be used for a proper city purpose if due authority is given by the legislature, bonds may be issued by

the city for such purpose, without the submission of the matter to the vote of the people. (*Post, p.* 176.)

6. **MUNICIPAL CORPORATIONS.** Act repealing by implication former act not invalid as conflicting therewith.

Private Acts 1919, chapter 598, repealed by implication Acts 1903, chapter 316, section 22, which provided that the aggregate indebtedness to be incurred by the city of Athens for street improvement, etc., shall not exceed ten per cent. of the value of the assessable property of the city, and is not invalid as conflicting therewith. (*Post, p.* 176.)

Acts cited and construed: Acts 1903, ch. 316, sec. 22.

7. **APPEAL AND ERROR.** Complaint as to validity of ordinances not stating grounds not considered on appeal.

Complaint that certain city ordinances were invalid as not complying with the provisions of Private Acts 1919, chapter 598, but not pointing out wherein or in what particular such ordinances are invalid, cannot be noticed on appeal. (*Post, p.* 176.)

8. **MUNICIPAL CORPORATIONS.** Sale of bonds, permitting purchaser to retain proceeds and pay city as work progressed, illegal.

The sale of bonds for street improvement, permitting purchaser to retain the proceeds without security to the city, and to pay the city only as the work progressed, was illegal. (*Post, pp.* 176, 177.)

Case cited and approved: Delafield v. State of Illinois, 26 Wend., 192.

9. **MUNICIPAL CORPORATIONS.** Sale of bonds, fixing no maximum amount for expense of issuance, illegal.

Acceptance by a city of a bid for bonds for street improvements, providing that the minimum allowance for printing and counsel fees in having their legality passed upon should not be less than $5,700, was illegal as fixing no maximum amount for such expenses. (*Post, pp.* 177, 178.)

Case cited ad approved: Miller v. Park City et al., 126 Tenn., 427.

10. **MUNICIPAL CORPORATIONS.** Within discretion of city to have proceeds of bonds deposited in particular bank.

It is within the discretion of city authorities to make an agreement

Reed v. Mayor and Aldermen of Athens.

with the purchaser of its bonds to deposit the proceeds of such bonds in a particular bank, provided they act in good faith and with due care and diligence. (*Post, p.* 179.)

11 **MUNICIPAL CORPORATIONS.** City has power to amend ordinances, reducing width of streets designated therein for improvement.

A city may amend its ordinances and reduce the width of the streets designated therein for improvement, so as to conform to proposed contract conditionally accepted. (*Post, pp.* 179, 180.)

### FROM McMINN.

Appeal from the Chancery Court of McMinn County.— HON. T. L. STEWART, Chancellor.

E. B. MADISON, for appellant.

JONES & DAVIS, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

This bill was filed by complainant, a resident and tax-payer of the city of Athens, to enjoin the sale and issuance of certain bonds about to be negotiated by the city for street improvement purposes. The bonds were authorized by chapter 598, Acts' (Private) of 1919, a front-foot assessment act. The bill challenges the constitutionality of this act.

The answer of defendants denied that said act was unconstitutional, and on the hearing of the cause by the chancellor upon the bill, exhibits thereto, the answer of defendants, and an agreed statement of facts, the bill was dismissed, and complainant has appealed.

The act is similar to other statutes of this State providing for special assessments for local improvements; and, among other things, it provides that two-thirds of the cost of the improvement shall be borne by the abutting property owners and one-third by the city. It authorizes the city to issue bonds to pay for the part of the work charged to the abutting property owners, and provides that the city shall be repaid by the assessments levied on the adjacent property to be discharged by the property owners. These assessments are made due and payable within thirty days after the assessments have been made, but at the option of the property owners in five annual installments.

It is urged that the last-mentioned provision of the act violates section 29, article 2, of the Constitution, which is as follows:

"But the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election."

It is argued that such improvement is for the benefit of the adjacent property owners; that bonds issued to pay for such improvement are in aid of such property owners, and therefore the issuance of such bonds is a lending of the city's credit in aid of such parties, in violation of the section of the Constitution above referred to.

It was held by this court in *Imboden* v. *City of Bristol,* 132 Tenn., 562, 179 S. W., 147, that although the improvement of a particular street may confer a peculiar benefit upon the property owners along that street—so peculiar as to justify a special assessment upon them—the improve-

ment is none the less a public improvement. In this case, as in that one, the expenditure is to be made on the city's own easement, its street, of which it has, and retains control, and of which all its citizens have the use. The act also provides that the. bonds to be issued shall be "the absolute and general obligations of the municipality."

It is said that both the title and body of the act embrace more than one subject, and therefore violates section 17, article 2, of the Constitution.

Counsel for complainant fails to point out the two or more subjects which he says the title and body contain. The title of the act is as follows:

"An act to be entitled 'An act authorizing the construction and improvement, the reconstruction and reimprovement of any street, avenue, alley or highway, within the corporate limits of any city, town or other municipal corporation in this State having a population of not less than 2,250 nor more than 2,300, according to the federal census of 1910, or any other subsequent federal census, by opening, extending, widening, grading, curbing, guttering, paving, graveling, macadamizing, parking or draining the same, and to authorize the assessment of a portion of the cost of such improvement upon the property abutting on or adjacent to such streets, avenues, alleys or highways so improved and to authorize the issuance of bonds to pay for such improvements and the redemption of such bonds.' "

The general disposition of the courts is to construe this provision of the Constitution liberally rather than to embarrass legislation by a construction, the strictness of which is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted. *Cannon* v. *Mathes,* 8 Heisk., 504; *Heiskell* v. *Knoxville,* 136 Tenn.,

376, 189 S. W., 857; *State* v. *Cumberland Club,* 136 Tenn., 84, 188 S. W., 583; *Scott* v. *Nashville Bridge Co.,* 143 Tenn., 106, 223 S. W., 844.

The generality of the title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. *Scott* v. *Nashville Bridge Co.,* supra, and the authorities there cited on page 106 of the opinion.

The subject expressed in the title of the act involved is the construction and improvement of streets within the corporate limits of cities and towns having a population of not less than 2,250 nor more than 2,300, according to the federal census of 1910, or any subsequent federal census, and it is agreed that the city of Athens falls within this class. All provisions of the act relate either directly or indirectly to the subject expressed in the title, and have a natural connection therewith. This is a compliance with the article of the Constitution referred to. *State* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941; *Memphis Street Railway Co.* v. *State,* 110 Tenn., 598, 75 S. W., 730; *Scott* v. *Nashville Bridge Co.,* supra,

It is next said that the act violates the third clause of section 17, article 2, of the Constitution, which provides that:

"All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

This contention has for its basis that the act amends chapter 316 of the Acts of 1903, which is the charter of Athens, without reciting in its caption the substance of said act. If this is true, it only does so by implication, and

Reed v. Mayor and Aldermen of Athens.

does not therefore violate this clause of said article. Statutes expressly purporting to repeal, revive, or amend former laws must recite in their caption or body the title, substance, or subject of the act sought to be repealed, revived, or amended. *Goodbar* v. *Memphis,* 113 Tenn., 27, 81 S. W., 1061; *Railroad* v. *Maxwell,* 113 Tenn., 464, 82 S. W., 1137; *Railroad* v. *Railroad,* 116 Tenn., 500, 95 S. W., 1019; *Malone* v. *Williams,* 118 Tenn., 444, 103 S. W., 798, 121 Am. St. Rep., 1002; *State ex rel.* v. *Taylor,* 119 Tenn., 253, 104 S. W., 242.

Acts which repeal, revive, or amend by implication former statutes need not recite in their caption, or otherwise, the title or substance of the laws so repealed by implication. *State ex rel.* v. *McConnell,* 3 Lea, 340; *State ex rel.* v. *Gaines,* 4 Lea, 353; *Insurance Co.* v. *Taxing District,* 4 Lea, 647; *State* v. *Yardley,* 95 Tenn., 558, 32 S. W., 481, 34 L. R. A., 656; *Railroad* v. *State,* 110 Tenn., 598, 75 S. W., 730; *State ex rel.* v. *Taylor,* supra; *Railroad* v. *Railroad,* supra.

It is next said that the act violates the homestead provision of the Constitution, in that it provides that all property assessed under the act for taxes may be sold for failure to pay the same by the owners, and may be sold in bar of the equity of redemption under a bill filed in the chancery court to enjoin the collection of said taxes.

This contention cannot be sustained. Section 11, article 11, of the Constitution expressly provides that the exemption of the homestead shall not operate against public taxes, nor debts contracted for the purchase money of such homestead or improvements thereon. Also by statute the homestead is subject to sale for public taxes legally assessed against it. Shannon's Code, section 3799; *State ex rel.* v. *Powers,* 124 Tenn., 533, 137 S. W., 1110.

It is next said that the act is invalid because it does not provide for the submission of the question whether or not said bonds shall be issued to a vote of the qualified voters of the city. '

Where the credit of a city or a county is to be used for a proper county or corporation purpose, if due authority is given by the legislature, bonds may be issued by the city or county for such purpose without a submission of the matter to a vote of the people. *Imboden* v. *City of Bristol,* supra, and authorities there cited.

It is next said that the act is invalid because it conflicts with section 22 of chapter 316, Acts of 1903 (charter of city of Athens), which provides that the aggregate indebtedness to be incurred by said city for street improvement, erection of public buildings, etc., shall not exceed ten per cent. of the value of the assessable property of the city, whereas the expenditure contemplated by the act in question is more than ten per cent.

It is a sufficient answer to this contention to say that this provision of the act of 1903 is repealed by implication by the act of 1919 (the act involved).

It is next said that the chancellor erred in not holding that certain ordinances passed by the city council, providing for the issuance and sale of the bonds authorized by the act, and providing for the improvement of certain streets of the city, were invalid because they do not comply with the provisions of said act.

It is a sufficient answer to this contention to say that complainant wholly fails to point out wherein or in what particular said ordinances are invalid.

It is next said that the chancellor erred in holding that the bid of R. J. Fisher for the bonds to be issued under

said act, which bid had been accepted by the city council, was in compliance with its provisions, and that the city could legally accept said bid, because one of the conditions of said bid was that Fisher was to have the right to pay for said bonds as the street work progressed and upon the estimates of the city's engineer; or, at his option, to pay as much at $50,000 of his bid in cash.

We are of the opinion that the city could not legally accept the bid of Fisher with such a condition in it. The act contemplated that the bonds should be sold for cash. Fisher, in his bid, does not offer to pay cash, but offered to pay for said bonds only as the street work progressed and upon the estimates of the city's engineer. This arrangement amounted to an extension of personal credit by the city to the purchaser of the bonds for the full consideration to be paid for them, if he should decide not to pay any part of the consideration in cash. This the city authorities were without power to do. By the terms of the bid Fisher was given the right to retain the proceeds arising from a sale of the bonds in his possession without any security whatsoever to the city, and was obligated to pay such proceeds to the city authorities only as the street work progressed and upon the estimates of the city's engineer. This gave Fisher an undue advantage, and the city was given no protection in the event of his becoming insolvent before the proceeds of the bonds could be expended in the prosecution of the work. Such an arrangement, if permitted, might result in heavy financial loss to the city. *Delafield* v. *State of Illinois*, 26 Wend. (N. Y.), 192.

It is next said that the chancellor erred in holding that the acceptance by the city of Fisher's bid for said bonds was invalid because the city council agreed that he should

146 Tenn.—12

be allowed not less than the sum of $5,700 to cover the expense of having said bonds printed and counsel fees in having their legality investigated and passed upon.

We think this condition in the bid was illegal, and could not be legally accepted by the city council.

It was held by this court in *Miller* v. *Park City et al.,* 126 Tenn., 427, 150 S. W., 90, Ann. Cas., 1913E, 83, that a provision in an act which deprives the city of the power to sell its bonds at less than par was not violated by an allowance of $1,000 for attorney's fees and the amount of other expenses incident to the sale, such as printing and lithographing the bonds, postage, etc., to the purchaser, especially where it did not appear that the allowance was a subterfuge to cover an unlawful sale, or that the amount paid was grossly unreasonable. In that case the bonds to be sold amounted to $25,000.

In the case at bar the bid offered and accepted provided that the amount to be allowed the purchaser by the city to cover these expenses should not be less than the sum of $5,700. This provision in the bid leaves the amount to be allowed the purchaser for having the bonds printed or lithographed, and for attorney's fees incurred in having their legality investigated and passed upon, indefinite and unlimited. The bid provides that the minimum allowance to cover these expenses shall not be less than $5,700, but no maximum amount is fixed, so we cannot tell what the amount of the allowance will ultimately be. It may be $5,700, or it may exceed that amount. We think, therefore, that by this agreement Fisher was given another undue advantage which might result in his receiving more than a reasonable amount for these expenses, and in the city receiving a sum considerably below par for its bonds.

It is next said that the chancellor erred in holding that the city could accept the bid of Fisher, because it contained a condition requiring the city authorities to deposit and keep on deposit the proceeds of said bonds in the First National Bank of Athens while the same was being expended in the prosecution of the street work.

We think this agreement was a matter within the discretionary powers of the city authorities, and one with which the courts will not interfere. In other words, it is within the discretion of the city authorities to make an agreement with the purchaser to deposit the proceeds of said bonds in a particular bank, provided they act in good faith and with due care and diligence.

It is next said that the chancellor erred in holding that the city council has the power to amend "Ordinance No. 300" so as to reduce the width of certain streets of the city, which are designated therein for improvement, with the proceeds of the bonds to be issued, so as to conform to the proposed contract of Coker, Gamble & Brown, whose bid for said street improvement had been conditionally accepted by the city council.

There is no error in this holding of the chancellor. The city council had undoubted power to amend its ordinances and reduce the width of streets to be improved. This is purely a matter of legislative discretion, and the chancellor was correct in so holding.

It results that the decree of the chancellor is modified to the extent of holding that the bid of Mr. Fisher, with the conditions hereinbefore mentioned in it, could not be legally accepted by the city authorities, and their acceptance of said bid was invalid. Of course, this does not in-

terfere with the right of Mr. Fisher to make the city a new bid with the objectionable features herein indicated eliminated, nor with the city's right to resell said bonds in accordance with the provisions of the act, if this should become necessary. In all other respect the decree of the chancellor is affirmed.