I. H. IRWIN *et al., v.* BEDFORD COUNTY *et al.*\*

(*Nashville.*   December Term, 1924.)

1. COUNTIES. Holders of county bonds not necessary parties to suit to
   enjoin collection of taxes to be used in payment.

   Holders of county highway bonds are not necessary parties to tax-
   payer's suit to have such bonds declared void, and to enjoin collec-
   tion of taxes for their payment. (*Post, pp.* 404-410.)

   Acts cited and construed: Acts 1919, chs. 149, 175; Acts 1913, ch. 26;
   Acts 1917, ch. 74.

   Case cited and approved: Wallace v. County Court, 3 Shan. Cas., 542.

2. COUNTIES. Statute held to evidence legislative intent to leave to
   county court's determination question whether conditions precedent
   to issuance of highway bonds had been complied with.

   Acts 1919, chapter 175, sections 1-4, 6 and 15, *held* to evidence legis-
   lative intent to leave to county court's determination question
   whether statutory conditions precedent to issuance of highway
   bonds had been complied with. (*Post, pp.* 410, 411.)

   Acts cited and construed: Acts 1913, ch. 26; Acts 1919, ch. 175; secs.
   1-4, 6, 15; Acts 1919, ch. 140; Acts 1917, ch. 74.

3. COUNTIES. County and taxpayer held estopped to question validity of
   highway bonds on ground of alleged irregularities in issuance.

   Recitals in county highway bonds, showing issuance in pursuance of
   and in strict conformity with Constitution of State and statutes,
   estop the county and its taxpayers as against *bona-fide* holders to
   assert that bonds were not for purposes recited and in compliance
   with statutes. (*Post, pp.* 411-413.)

   Cases cited and approved: L. & N. R. R. Co. v. State of Tenn., 55
   Tenn., 780; State v. Anderson County, 67 Tenn., 253; Barnard v.
   Hawkins County, 2 Shan. Cas., 97; Pulaski v. Gilmore, 3 Shan. Cas.,

   ---

   \*On private corporate bonds as negotiable within the meaning of
   Negotiable Instrument Act, see note in 31 A. L. R. 1390.

Irwin v. Bedford Co.

116; Carriger v. Mayor & Aldermen of Morristown, 69 Tenn., 243; Clay v. Justices of Hawkins Co., 73 Tenn., 141; Nelson v. Haywood Co., 87 Tenn., 806; Johnson City v. Railroad, 100 Tenn., 147; Weil v. Newbern, 126 Tenn., 257; Town of Coloma v. Eaves, 92 U. S., 484; County of Moultrie v. Savings Bank, 92 U. S., 636; Humboldt Township v. Long, 92 U. S., 642; Dixon Co. v. Field, 111 U. S., 94; Anderson Co. v. Beal, 113 U. S., 238; Chaffee Co. Comm'rs v. Potter, 142 U. S., 366; Provident Life & T. Co. v. Mercer Co., 170 U. S., 593; Gunnison Co. v. E. H. Rollins & Sons, 173 U. S., 255; Quinlan v. Green Co., 205 U. S., 416; County Presidio v. Noel-Young Bond & Stock Co., 212 U. S., 58.

4. CORPORATIONS. Municipal corporations. Negotiable Instruments Act applies to public and corporate bonds.

Negotiable Instruments Act, section 59, declaring that every holder is deemed prima-facie a holder in due course, applies to public and corporate bonds. (*Post, pp.* 413, 414.)

Acts cited and construed: Acts 1899, ch. 94.

Case cited and approved: Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn., 7.

5. COUNTIES. Highway bonds to cover one-third cost of improvement, balance being paid by State, held not loaning of county's credit in violation of Constitution.

County highway bonds, issued pursuant to Acts 1919, chapter 175 to cover one-third cost of highway improvement, remaining two-thirds being paid for by State, *held* not a loaning of county's credit in violation of Constitution, article 2, section 29. (*Post, pp.* 414, 415.)

*Headnotes 1. Counties, 15 C. J., Section 357; 2. Counties, 15 C. J. Section 327; 3. Counties, 15 C. J., Section 336; 4. Corporations, 14a C. J., Section 2571; Municipal Corporations, 28 Cyc., p. 1610; 5. Counties, 15 C. J., Section 296.

## FROM BEDFORD.

Appeal from the Chancery Court of Bedford County.
—Hon. Thos. B. Lytle, Judge.

J. W. Frost and Parks & Bean, for Irwin.

Thos. N. Greer, Cooper & Cooper and B. D. Kingree,
for Bedford Co.

Mr. Justice McKinney delivered the opinion of the
Court.

The bill in this cause was filed on October 26, 1923,
by a number of taxpayers of Bedford county, against
Bedford county and H. A. Campbell, trustee of said
county, to have $200,000 of road bonds sold by said
county on August 28, 1920, declared void, and to enjoin
the defendant trustee from collecting the taxes assessed,
and to be thereafter assessed, for paying said bonds.

The defendants demurred and answered, and, upon
the hearing, the chancellor dismissed the bill, and the
complainants have appealed to this court and have as-
signed numerous errors.

The holders of said bonds were not made parties to
the suit, it being alleged in the amendment to the bill
that their names and residences were unknown.

In *Wallace* v. *County Court,* 3 Shan. Cas., 542, it was
held that, under the facts appearing, the bondholders
were not necessary parties.

The bonds in question were issued and sold pursuant
to chapter 175, Acts of 1919, the pertinent provisions of
which are as follows:

"Section 1. Be it enacted by the general assembly of
the State of Tennessee, that the county courts of the
various counties in this State, when in quarterly or extra
session assembled, a quorum being present, and a major-

ity of those present voting in the affirmative, be, and are hereby authorized to issue coupon bonds for highway purposes; such bond to be of the denomination of one thousand dollars ($1,000) or some less amount which is a multiple of one hundred dollars ($100); to bear not exceeding six per cent. interest and be disposed of not less than par and accrued interest. They shall mature at such time or times as the court may determine, not exceeding forty years from date of issuance, and may be made redeemable at option of the county at such time or times as the court may fix. The bonds and coupons shall be signed by the judge or chairman and countersigned by the clerk of the county court under the seal of his office. . . .

"Sec. 2. Be it further enacted, that the order of the quarterly court for a highway bond issue shall not be effective until it has been submitted to the qualified voters of the county for ratification or rejection at their hands. The court shall fix the date of the election, giving not less than thirty days notice of same by publication in at least one issue of some newspaper of the county, or if there be none then in some paper that circulates freely in the county. . . .

"Sec. 3. Be it further enacted, that if the State highway department should at any time propose or agree to supply or appropriate a specified sum of money for the construction or improvement of any road and bridge or bridges, or any roads and bridges in any county in the State, the county court of such county by majority vote of said court, in regular or called session, is hereby authorized and fully enpowered under the provisions of this act, to appropriate for the said purpose a sum not

to exceed double the amount contributed by the said State highway department and should there not be funds in the county treasury sufficient to meet the said appropriation then without a submission to a vote of the legally qualified voters of said county the county court of such county is hereby authorized and fully empowered to issue interest-bearing coupon bonds for the amount required to co-operate on a financial basis with the State highway department, in order to secure federal or State or federal and State aid for the said improvement; provided such bonds as may be issued under the provisions of this section and as herein provided shall not in the aggregate exceed five per cent. of the taxable values of such county which may either be in single order; or successive orders as the said court may determine; provided, further, the same provisions shall apply to bonds issued under this section relating to tax, interest, sinking fund and retirement of same as provided for bonds issued by majority vote of the legally qualified voters of such county under the provisions of this Act, which shall be set out by order of the said court, and all bonds issued under the provisions and authority of this Act shall be incontestable obligations of such county issuing same."

Section 4 provides that such bonds shall be sold by competitive bidding by sealed bids, provides for the method of advertising the sale, and for a report of sale by the judge or chairman of the county court and the revenue commissioners, who are authorized to sell the bonds.

Section 6 provides for a sinking fund tax with which to liquidate the bonds.

Section 15 provides:

"That under this act any county in the State of Tennessee is hereby authorized to issue bonds for the purpose of grading roads, for the purpose of grading, macadamizing roads, for the purpose of grading and concreting roads, for the purpose of building complete concrete roads, for the purpose of building macadam roads with an asphalt surface, for the purpose of building bridges on roads, for the purpose of draining roads, or for the purpose of maintaining or reconstructing roads already constructed, or for any kind of standard road improvement or construction; provided, that the kind of improvement shall at all times be subject to the determination of the county court and must be approved by the State department of highways; provided, further, that the form of such bonds and the coupons thereto, as well as the form of proceedings authorizing the same shall at all times be subject to any directions that may be given by said State department of highways, also all plans and specifications for the improvement of said roads or bridges shall be approved by the said department."

It will thus be seen that the legislature expressly authorized the counties of the State to issue and sell bonds for road purposes.

The quarterly county court, at its April session 1920, passed a resolution authorizing the issuance and sale of these bonds, its reason for so doing being contained in the following part of said resolution, to-wit:

"In the Matter of Highway Bond Issue.

"Be it resolved by the county court of Bedford county, State of Tennessee, in quarterly session assembled:

"Section 1.   That said county court is composed of
forty-two justices of the peace; that a majority thereof
being present and attending; that a quorum of said court
is twenty-eight; and that, a quorum being present and
attending, the State highway department has agreed
with Bedford county by proper resolution as follows:

"Agreement of the State Highway Department with
Bedford County under Direction of the Highway Com-
mission of the State of Tennessee.

" 'By virtue of chapter 149 of the Acts of 1919, chap-
ter 26, Acts of 1913, as amended by chapter 175 of the
Acts of 1919, and chapter 74 of the Acts of 1917, the said
commission proposes to Bedford county to furnish from
year to year, as fast as the moneys are available from
the State and federal fund, an amount for the purpose
of constructing certain roads and necessary culverts and
bridges within the limits of Bedford county, designated
and described as follows:

" 'No. 1.   From Shelbyville north to the Rutherford
county line.

" 'No. 2.   Shelbyville to the Lincoln county line (Nos.
1 and 2 being the main north and south road through
the county); No. 3.   Shelbyville west to the Marshall
county line.   Being inter-county seat connection; said
roads to be constructed in the order set out.

" 'The amount that the State highway commission
will furnish shall be two-thirds of the cost of construc-
tion of said roads, bridges, and culverts of the county,
and its part shall be one-third.   Bedford county must
adopt a resolution in consideration of the foregoing prop-
osition, and to issue its bonds and provide its one-third
part of said road construction cost within thirty days

after the State highway commission has notified said county that the State highway commission's part of said fund is available, and has been appropriated to the account of said roads.

" 'This 1st day of April, 1920, Nashville, Tennessee.
" 'STATE HIGHWAY COMMISSION;
" 'W. W. HOUSE, Chairman,'
to supply and appropriate the sum of two hundred thousand ($200,000) dollars for the construction of ———— in said county; that in accordance and in consideration of said agreement, that there be issued negotiable coupon bonds of Bedford county, State of Tennessee, to be styled 'Highway Bonds (Series 19—),' in the aggregate amount of two hundred thousand ($200,000) dollars,'' etc.

While conceding that the legislature authorized the issuance of road improvement bonds by the county, it is contended by the complainants that certain conditions precedent were not complied with.

First, that there was not a sufficient proposal or agreement on the part of the State highway department to authorize the county court to act.

Second, because the resolution providing for the bond issue was not read over to the county court.

Third, because a majority of the whole court did not, in fact, vote for the resolution.

Fourth, because the words "county judge" were used in the resolution instead of the words "chairman of the county court," there being no such officer as "county judge."

Fifth, because the report as to the sale, which was spread upon the minutes of the court, shows that the

bonds were sold for less than face value and accrued interest.

We deem it unnecessary to discuss in detail these objections, which relate to the regularity of the proceedings, because it was evidently the intention of the legislature to leave it to the county court to determine whether the facts existed which constituted the statutory conditions precedent to the issuance of the bonds, for the reason that there was no requirement that these facts be made a matter of public record, and the act providing that "all bonds issued under the provisions and authority of this act shall be incontestable obligations of such county issuing same."

Each bond contained the following recitals:

"This bond is issued under and in pursuance of and strict conformity with the Constitution of the State of Tennessee, the statutes under which Bedford county is organized and all amendments thereto, and in pursuance of chapter 26 of the Acts of 1913, passed on September 25, 1913, and approved on September 27, 1913, and amendments thereto being chapter 175 of the Acts of 1919, passed April 16, 1919, and approved April 17, 1919, and chapter 140 of the Acts of 1919, passed April 15, 1919, and approved April 16, 1919, and chapter 74 of the Acts of 1917, passed March 30, 1917, and approved April 3, 1917, and amendment being Senate Bill 1118 of Acts of 1919, passed April 16, 1919, and approved April 17, 1919, and pursuant to a resolution duly adopted by the county court in quarterly session assembled (here set out the purposes for which funds are to be used).

"It is hereby certified, recited, and declared that all acts, conditions and things required to be done, exist and

be performed precedent to and in the issuance of this bond in order to make this bond a legal, valid, and binding obligation of Bedford county, State of Tennessee, have been done, existed and been performed, in regular and due time, form and manner, as required by law; that provision has been made by law and resolution for the levy and collection of the direct annual tax upon all taxable property within said county sufficient to pay the principal and interest hereof as the same shall fall due; and that the indebtedness represented by this bond, together with all other indebedness of said county, does not exceed five per cent. of the taxable value of said county as shown by the last preceding assessment for county taxation, nor does it exceed any limit prescribed by the Constitution or any statute of the State of Tennessee. The full faith and credit of Bedford county, State of Tennessee, are hereby pledged for the prompt payment of principal and interest of this bond as the same become due.''

This court has uniformly followed the decisions of the supreme court of the United States in holding that recitals in county bonds, which fairly import a compliance in all respects with the statute specified therein, as empowering the county court to issue bonds for county purposes, relieve a purchaser from the necessity of examining the order of such court referred to in the bonds as authorizing the issue, and estop the county to assert, as against a *bona-fide* holder, that its bonds were not issued for the purposes and in compliance with the statutes. *L. & N. R. R. Co.* v. *State of Tennessee,* 8 Heisk., 780; *State* v. *Anderson County,* 8 Baxt., 253; *Barnard* v. *Hawkins County,* 2 Shan. Cas., 97; *Pulaski* v. *Gilmore,*

3 Shan. Cas., 116; *Carriger* v. *Mayor & Aldermen of Morristown*, 1 Lea, 243; *Clay* v. *Justices of Hawkins County*, 5 Lea, 141; *Nelson* v. *Haywood County*, 87 Tenn., 806, 11 S. W., 885, 4 L. R. A., 648; *Johnson City* v. *Railroad*, 100 Tenn., 147, 44 S. W., 670; *Weil* v. *Newbern*, 126 Tenn., 257, 148 S. W., 680, L. R. A., 1915A, 1009, Ann. Cas., 1913E, 25; *Town of Coloma* v. *Eaves*, 92 U. S., 484, 23 L. Ed., 579; *County of Moultrie* v. *Savings Bank*, 92 U. S., 636, 23 L. Ed., 631; *Humboldt Township* v. *Long*, 92 U. S., 642, 33 L. Ed., 752; *Dixon County* v. *Field*, 111 U. S., 94, 4 S. Ct., 315, 28 L. Ed., 360; *Anderson County* v. *Beal*, 113 U. S., 238, 5 S. Ct., 433, 28 L. Ed., 966; *Chaffee County Commissioners* v. *Potter*, 142 U. S., 366, 12 S. Ct., 216, 35 L. Ed., 1040; *Provident Life & T. Co.* v. *Mercer County*, 170 U. S., 593, 18 S. Ct., 788, 42 L. Ed., 1156; *Gunnison County* v. *E. H. Rollins & Sons*, 173 U. S., 255, 19 S. Ct., 390, 43 L. Ed., 689; *Quinlan* v. *Green County*, 205 U. S., 416, 27 S. Ct., 505, 51 L. Ed. 860; *County Presidio* v. *Noel-Young Bond & Stock Co.*, 212 U. S., 58, 29 S. Ct., 237, 53 L. Ed., 402.

In *Weil* v. *Newbern*, supra, innocent purchasers of bonds of the city of Newbern were denied a recovery upon the ground that the bonds were invalid because issued pursuant to a void election. The bonds were, in fact, executed only by the mayor and the recorder of Newbern. The court recognized an exception to the general rule to this effect; it held that, had the bonds been executed by the members of the board of mayor and aldermen (as provided in the enabling act), that the city would be bound by the recitals contained therein; and the court conceded the right of the board of mayor and

aldermen, by ordinance, to authorize the mayor and recorder to execute said bonds as its agent, but said:

"But it is obvious that when the bonds are signed, not by the persons or body authorized by the enabling statute to issue them, but by other persons referred to in the bonds as appointed for the purpose by the body having power to issue, one intending to purchase must examine the record of appointment, to obtain assurance that such persons have been appointed for the purpose."

The court then stated that, had the purchasers of the bonds examined said ordinance for the purpose of verifying the authority of the mayor and recorder to execute the bonds, they would have discovered that the election was void, because it appeared from the ordinance that the election was held by the sheriff while, under the law, it should have been held by the election commissioners.

In the Newbern Case the bondholders subsequently instituted suit in the federal court and recovered, the circuit court of appeals disagreeing with the decision of this court in the Weil Case.

The exception just referred to, however, has no application in the instant case, for the reason that the enabling act expressly provides that the bonds "shall be signed by the judge or chairman, and countersigned by the clerk of the county court under the seal of his office."

Presumptively, the owners of these bonds are "holders in due course."

Section 59 of the Negotiable Instruments Act (Acts 1899, chapter 94) provides that "every holder is deemed *prima facie* to be a holder in due course." This act ap-

plies to public and corporate bonds.  *Nickey Bros.* v. *Lonsdale Mfg. Co.*, 149 Tenn., 7, 257 S. W., 403, 31 A. L. R., 1383.

The purchasers of these bonds paid face value for same, and the proceeds were used in constructing roads in Bedford county, and the complainants and the county must be held estopped to question their validity.

It is also insisted by the complainants that the Act of 1919, authorizing the bond issue, is invalid because, in conflict with article 2, section 29 of the State Constitution, which provides:

"But the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election."

The point is made that the county of Bedford loaned its credit to the State without the assent of three-fourths of the qualified voters of the county.

The reverse of this; that is, that the State loaned its credit to the county, would more nearly comport with the facts. The State was to provide two-thirds of the funds to build hard-surface roads in Bedford county, for the benefit of the citizens of the county. Furthermore, the county, being an arm or part of the State, was, in effect, contributing to itself, and not to "any person, company, association, or corporation" within the meaning of this constitutional inhibition.

Under the statute the chancellor fixed the fee for solicitors representing the county at $3,000.

There is no complaint as to this, but we are asked to allow an additional fee for services rendered the defendants in this court, which we do and fix said fee at the sum of $1,500.

For the reasons stated, we are of the opinion that the chancellor properly dismissed the bill, and his decree will be affirmed, with costs.